**Electronically Filed**
**Intermediate Court of Appeals**
**30472**
**13-JAN-2012**
**08:17 AM**

NO. 30472

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


DONNA W. KUEHU, Claimant-Appellant,
v.
UNITED AIRLINES, INC., Employer-Appellee, Self-Insured,
and
GALLAGHER BASSETT SERVICES, INC.,
Third-Party Administrator-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2007-142 (2-05-10623) (2-06-06908))


MEMORANDUM OPINION
(By: Foley, Presiding J., Leonard and Ginoza, JJ.)


In this workers' compensation case, Claimant/Appellee-Appellant pro se Donna W. Kuehu (Kuehu) appeals from the Decision and Order (D&O) filed on February 26, 2010 by the State of Hawai‘i Labor and Industrial Relations Appeals Board (LIRAB). In its D&O, LIRAB reversed the March 19, 2007 Decision of the Director of Labor and Industrial Relations (the Director); the Director had found in favor of Kuehu and against Self-Insured Employer/Appellant-Appellee United Airlines, Inc. (United Airlines) and Third-Party Administrator/Appellant-Appellee Gallagher Bassett Services, Inc. (Gallagher Bassett) (collectively, United Airlines or UA).

Kuehu raises the following points of error on appeal:

(1)    LIRAB erred in Findings of Fact (FOFs) 36, 37, 47, and 48.

(2)    LIRAB erred in Conclusion of Law (COL) 1, when it found that Kuehu had not sustained a personal injury on January 25, 2006 arising out of and in the course of her employment and instead found that Kuehu's condition was an undifferentiated somatoform disorder.

(3)    LIRAB erred in COL 2, when it found that Kuehu was not entitled to temporary total disability (TTD).

## I.    BACKGROUND

On August 22, 2005, Kuehu allegedly was injured while working at the United Airlines Reservations Center (Reservations Center) when "sewer gases seep[ed] through bathroom area walls," exposing her to toxic fumes.  On November 4, 2005, Kuehu filed a Form WC-5 "Employee's Claim for Workers' Compensation Benefits" (2005 Claim), alleging she had suffered "headache, dizziness, forgetfulness, poor vision, difficult concentration, nausea, [and] diarrhea" as a result of the toxic fumes.  Dr. Agles conducted a medical record review concerning the 2005 Claim. Dr. Agles noted that Dr. Seberg had examined Kuehu on August 23, 2005, the day after the exposure, and the "[c]linical examination was normal except for a cold sore."  Dr. Agles also noted that Dr. Seberg had indicated that Kuehu suffered from "chronic fibromyalgia-like symptoms," but did not associate the cause of the symptoms to the exposure to sewer gases.  Dr. Agles concluded that Kuehu's "current symptoms are not related to the incident on 8/22/05."

Even so, Gallagher Bassett filed a letter with the Department of Labor and Industrial Relations, Disability Compensation Division, indicating that United Airlines accepted "limited liability" for the 2005 Claim and agreed to pay for Kuehu's medical treatment from August 22, 2005 through August 29, 2005.  The claim came up for review before the Director on January 12, 2006, who entered a Decision on February 10, 2006,

2

concluding that United Airlines had "voluntarily accepted" Kuehu's 2005 Claim as a compensable injury and ordering United Airlines to pay medical and temporary total disability (TTD) benefits. Whether there was any permanent disability and/or disfigurement was left to be determined at a later date. Neither party appealed from the Director's February 10, 2006 Decision. On May 5, 2006, Kuehu submitted a letter asking for a recalculation of her average weekly wage. On June 9, 2006, the Director issued an Amended Decision, awarding Kuehu TTD benefits of $355.41.

In the meantime, Kuehu allegedly suffered another work-related injury on January 25, 2006, caused by exposure to toxic fumes from sewer gases. On July 25, 2006, Kuehu filed a WC-5 "Employee's Claim for Workers' Compensation Benefits" (2006 Claim), alleging a "[r]e-occurrence of exposure to toxic fumes." Kuehu described her symptoms as "[h]eadache, dizziness, brain swelling, mouth sore, skin blisters, nerve twitches, muscle ache & stiffness, exhaustion, fatigue, heart palpitations, [and] liver [problems]."

On August 29, 2006, Kuehu filed another WC-5 claim "[a]sserting statutory rights" and requesting consolidation of the 2006 Claim with the 2005 Claim. On January 9, 2007, she filed an amended WC-5 claim, adding "stress" to her list of injuries.

The two claims were consolidated and heard by the Hearings Officer on January 30, 2007. The issues to be determined were whether Kuehu had (1) sustained a recurrence of the 2005 injury, (2) sustained a work-related injury on January 25, 2006, and (3) received TDI benefits after January 25, 2006. On March 19, 2007, the Director issued a Decision that determined Kuehu had sustained a new work-related injury on January 25, 2006. The Director credited the opinions of Dr. Seberg and Dr. Ewing that Kuehu had been exposed to toxic fumes at work that led to her illness. The Director awarded medical care and services "as the nature of the 1/25/2006 injury may require" and

TTD benefits of $34,288.28 for the period from January 29, 2006 through January 30, 2007.

United Airlines appealed to LIRAB from the Director's March 19, 2007 Decision.  On February 26, 2010, LIRAB issued the D&O, reversing the Director's March 19, 2007 Decision.  LIRAB determined Kuehu had not suffered a work-related injury on January 25, 2006 and was not entitled to TTD benefits.

On March 25, 2010, Kuehu filed a "Motion for Reconsideration or Reopening of [D&O] filed February 26, 2010." LIRAB filed its "Order Denying Motion for Reconsideration" on March 31, 2010.  On April 26, 2010, Kuehu timely appealed to this court.

## II.  STANDARD OF REVIEW

### A.  Deference to Administrative Agencies

In determining whether an agency determination should be given deference, the standard to be applied is as follows:

> [W]hen reviewing a determination of an administrative agency, we first decide whether the legislature granted the agency discretion to make the determination being reviewed.  If the legislature has granted the agency discretion over a particular matter, then we review the agency's action pursuant to the deferential abuse of discretion standard (bearing in mind that the legislature determines the boundaries of that discretion).  If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to de novo review.

> *Paul's Electrical Service, Inc. v. Befitel*, 104 Hawai'i 412, 419-20, 91 P.3d 494, 501-[02] (2004).

Olelo:  The Corp. for Cmty. Television v. Office of Info. Practices, 116 Hawai'i 337, 344, 173 P.3d 484, 491 (2007).

Appellate review of a LIRAB decision is governed by HRS § 91-14(g) (1993), which states that:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

> (1) In violation of constitutional or statutory provisions; or

4

> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedure; or
> (4) Affected by other error of law; or
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

We have previously stated:

> FOFs are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record.
>
> COLs are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.
>
> A COLS that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. The court should not substitute its own judgment for that of the agency.

Igawa v. Koa House Rest., 97 Hawaiʻi 402, 405-06, 38 P.3d 570, 573-74 (2001) (internal quotation marks, citations, and brackets in original omitted) (quoting In re Water Use Permit Applications, 94 Hawaiʻi 97, 119, 9 P.3d 409, 431 (2000)).

> An FOF or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

In re Water Use Permit Applications, 94 Hawaiʻi at 119, 9 P.3d at 431 (internal quotation marks and citations omitted).

## III.  DISCUSSION

### A.    LIRAB did not err in FOFs 36, 37, 47, and 48.

The appellate court reviews an administrative agency's FOFs under the clearly erroneous standard. Igawa, 97 Hawaiʻi at 406, 38 P.3d at 574. An FOF "is clearly erroneous when (1) the record lacks substantial evidence to support the finding or

5

determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made." In re Water Use Permit Applications, 94 Hawaiʻi at 119, 9 P.3d at 431. "Ordinarily, deference will be given to decisions of administrative agencies acting within the realm of their expertise." Coon v. City & Cnty. of Honolulu, 98 Hawaiʻi 233, 245, 47 P.3d 348, 360 (2002) (internal quotation marks, citations, and brackets omitted).

Kuehu disputes the following FOFs:

36. The Board credits the opinions of Drs. Agles, Direnfeld, and Goodyear, that [Kuehu's] condition is an undifferentiated somatoform disorder, over the opinions of Drs. Ewing and Seberg that [Kuehu] has multiple chemical sensitivity, chronic pain syndrome, fibromyalgia, or candidiasis.

37. The Board also finds that the undifferentiated somatoform disorder is not a personal injury that arose out of and in the course of employment on either January 25, 2006 or August 22, 2005.

\* \* \*

47. The Board applied the statutory presumption and finds that Employer has presented substantial evident [sic] to rebut or overcome the presumption of compensability.

48. The Board finds [Kuehu's] disability from work, if any, was not attributable to a compensable work injury, but, rather, a non-compensable somatoform disorder, as diagnosed by Dr. Direnfeld, Dr. Agles, and Dr. Goodyear.

Kuehu does not challenge the Board's FOF 35 that found she "was not exposed to medically significant amounts of [hydrogen sulfide], and was not exposed to such gas for an extended period of time on January 25, 2006." Generally, findings that are not challenged on appeal are binding upon this court and "are the operative facts of a case." Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawaiʻi 224, 239, 982 P.2d 853, 868 (1999), superseded by statute on other grounds as recognized in Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, 113 Hawaiʻi 77, 107, 148 P.3d 1179, 1209 (2006). Therefore, it is

6

taken as fact that Kuehu was not exposed to a medically significant amount of toxic fumes.

Additionally, Hawaii Revised Statutes (HRS) § 386-85 (1993) provides that where compensability of an injury is at issue, there is a rebuttable presumption that the injury is work-related. The employer may rebut the presumption by presenting substantial evidence to show otherwise. Flor v. Holguin, 94 Hawai‘i 70, 79, 9 P.3d 382, 391 (2000). United Airlines presented evidence of air quality tests of the Reservations Center conducted by the Honolulu Fire Department; United Airline's industrial hygienist; Environomics South West, LLC; and the Hawaii Occupational Safety and Health Division. The tests showed either no detectable level of hydrogen sulfide or a level within permissible exposure levels.

Furthermore, "the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro v. Control Specialist, Inc., 97 Hawai‘i 86, 92, 34 P.3d 16, 22 (2001). United Airlines presented evidence from several medical experts who opined that Kuehu's alleged symptoms were not caused by exposure to toxic fumes. LIRAB credited the opinions of Dr. Agles, Dr. Direnfeld, and Dr. Goodyear and did not credit the opinions of Kuehu's treating physicians, Dr. Seberg and Dr. Ewing.

Dr. Agles prepared a records review report on October 28, 2005 regarding Kuehu's 2005 Claim. In Dr. Angles' report, she acknowledged there had been a low level transient release of sewer gases in Kuehu's work area restroom. She also noted that the Honolulu Fire Department HAZMAT team had found no detectable levels of hydrogen sulfide gas. Dr. Angles opined that, other than the noxious "rotten egg sewer gas" smell, there was "no significant chemical exposure that has resulted in any need for disability from work."

In a supplemental report made after the Director determined that United Airlines had "voluntarily accepted the

[August 22, 2005] work injury," Dr. Agles disagreed with the Director's February 10, 2006 Decision, noting again that the HAZMAT team had found "no detectable levels of hydrogen sulfide gas." She also cited statistics from the Poison Control Center in Denver that indicated that at low levels, hydrogen sulfide gas is merely a noxious, rotten egg smell, but is not harmful.

Dr. Agles examined Kuehu on July 12, 2006, based on Kuehu's 2006 Claim. Dr. Agles noted that Kuehu's "subjective complaints are diffuse, odd, and unsubstantiated by the clinical examination," which was "completely normal, except for abnormal cerebellar findings" unrelated to her workers' compensation complaint. Using a "pain diagram" to note the reported areas of pain, Dr. Agles concluded that the results were "most consistent with a somatoform pain disorder,[1] and would be completely inconsistent with an alleged exposure to low level hydrogen sulfide gas (which has not been borne out with repeat air sampling)." Dr. Agles concluded: "I would disagree with any

---

[1] Undisputed FOF 28 provides Dr. Direnfeld's description of the diagnosis of somatoform disorder as presented in his November 28, 2007 report, citing to the DSM-IV-TR diagnostic criteria:

    A.    One or more physical complaints (i.e., fatigue, loss of appetite, gastrointestinal or urinary complaints).

    B.    (1) or (2):
        1.    After appropriate investigation the symptoms cannot be fully explained by a known general medical condition or the direct effects of a substance.
        2.    When there is a related general medical condition, the physical complaints or resulting social or occupational impairment is in excess of what would be expected from the history, physical examination, or laboratory findings.

    C.    The symptoms cause clinically significant distress or impairment in social, occupational, or other important areas in functioning.

    D.    The duration of the disturbance is at least six months.

    E.    The disturbance is not better accounted for by another mental disorder (i.e., another somatoform disorder, sexual dysfunction, mood disorder, anxiety disorder, sleep disorder, or psychotic disorder).

    F.    The symptom is not intentionally produced or feigned (as in factitious disorder or malingering).

provider that finds [Kuehu] medically disabled based upon her subjective complaints, which are unsubstantiated clinically or by objective testing either of the patient or the workplace."

Dr. Direnfeld prepared a records review report on September 24, 2007, examined Kuehu on November 20, 2007, and prepared a subsequent report on November 28, 2007. He, too, diagnosed Kuehu with an undifferentiated somatoform disorder.

Dr. Goodyear conducted an independent pyschological examination of Kuehu, and in his December 17, 2007 report, he also diagnosed Kuehu with an undifferentiated somatoform disorder. He noted that there was no objective evidence that Kuehu was exposed to toxic levels of hydrogen sulfide and concluded that Kuehu had not suffered any "brain-related impairment" in cognitive functioning. Dr. Goodyear also noted Kuehu was functioning normally in other areas of her life, including her community college courses.

LIRAB did not credit the opinions of Dr. Seberg and Dr. Ewing. Dr. Seberg noted in his January 25, 2006 examination of Kuehu that "[s]he is now not complaining of anything in particular, but every thing in general." In his February 24, 2006 report, Dr. Seberg noted that Kuehu was "very anxious" and claimed that alleged "skin disease, asthma, sinusitis, and mental lapses" were side effects of the sewer gas exposure. Kuehu expressed concern about some "very small red spots" on her leg and arm that she claimed she did not have before the exposure, but Dr. Seberg did not believe there was a causal relationship. Dr. Seberg also noted that Kuehu "has become very obsessed by this [sewer gas exposure] and seems to think of nothing else." On March 24, 2006, he noted that Kuehu "can easily pass a mini mental status exam," but that she claimed "it is impossible for her to remember, she has to write things down, and that she has times when she lapses into a dazed state."

Dr. Ewing evaluated Kuehu on March 17, 2006 and diagnosed her with "chemical sensitivity" due to chemical exposures. He noted in a letter to the referring doctor,

Dr. DeBoard, that Kuehu "had persistent and recurrent symptoms" related to "toxic chemical sensitivity and chemical reaction" since 1999 when she began work at the Reservations Center. In a letter dated February 14, 2008, Dr. Ewing opined that Kuehu "has the residuals of multiple chemical sensitivity, fibromyalgia, and chronic fatigue syndrome" originating "from [Kuehu's] work exposures while working at the United Airlines office."

We conclude that United Airlines presented reliable, probative, and substantial evidence to support LIRAB's determination that Kuehu had not suffered a compensable work-related injury. LIRAB's finding that Kuehu's condition was "an undifferentiated somatoform disorder" and was "not a personal injury that arose out of and in the course of employment on January 25, 2006 " was not clearly erroneous.

### B. LIRAB did not err in COLs 1 and 2.

COLs 1 and 2 are mixed questions of fact and law that we review under the clearly erroneous standard because the conclusion that Kuehu did not sustain a personal work-related injury is dependent upon the facts of this case. Igawa, 97 Hawai'i at 406, 38 P.3d at 574. "When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. The court should not substitute its own judgment for that of the agency." Id. (internal quotation marks, citations, and brackets omitted) (quoting In re Water Use Permit Applications, 94 Hawai'i at 119, 9 P.3d at 431).

LIRAB concluded the following, in relevant part:

> 1. The Board concludes that [Kuehu] did not sustain a personal injury on January 25, 2006, arising out of and in the course of employment. [Kuehu's] condition is an undifferentiated somatoform disorder, and not multiple chemical sensitivity, chronic pain syndrome, fibromyalgia, or candidiasis.
>
> Although [Kuehu] may have been exposed to an unpleasant smell on January 25, 2006, results from testing for such odors were below a level that could be measured. Crediting the opinions of Dr. Agles, Dr. Direnfeld, and Dr. Goodyear, the Board concludes that [Kuehu's] reported symptoms are not consistent with exposure at such insignificant concentrations or

10

> low levels, and are not substantiated either
> clinically or by the medical literature.
>
> Further, although [Kuehu] attended an office
> visit on January 25, 2006, Dr. Seberg's treatment
> notes do not reflect that anything clinically
> significant occurred on that date. [Kuehu's] next
> visit to Dr. Seberg was February 24, 2006, at which
> time she reported that she had been experiencing
> symptoms for one day.
>
> The presumption of compensability has been
> rebutted or overcome by substantial evidence to the
> contrary.
>
> Based upon the expert opinions of Drs. Agles,
> Direnfeld, and Goodyear, the Board concludes that
> [Kuehu's] condition is an undifferentiated somatoform
> disorder, and not multiple chemical sensitivity,
> chronic pain syndrome, fibromyalgia, or candidiasis.
>
> *         *         *
>
> 2.    Given the foregoing, the Board further concludes that
>       [Kuehu] is not entitled to temporary total disability.

Kuehu argues that LIRAB erred in not crediting the opinion of Dr. Direnfeld and Dr. Ewing as to her January 25, 2006 alleged injury. Dr. Direnfeld testified at the April 11, 2008 hearing that if Kuehu had been exposed to hydrogen sulfide and experienced symptoms on January 25, 2006, she would have suffered a work injury on that day. However, as previously indicated, LIRAB found that Kuehu had not been exposed to a detectable, injury-producing level of hydrogen sulfide, so Dr. Direnfeld's testimony did not support a finding of injury.

LIRAB did not credit Dr. Ewing's opinion. As previously noted, "the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro, 97 Hawai'i at 92, 34 P.3d at 22.

We do not disturb LIRAB's decision as to the weight it gave the witnesses' testimony and reports; therefore, LIRAB's conclusion that Kuehu failed to show she had suffered a work-related injury on January 25, 2006 was not clearly erroneous. Furthermore, because COL 1 was not clearly erroneous, LIRAB did not err in COL 2 when it concluded that Kuehu was not entitled to TTD.

11

## IV.  CONCLUSION

The Decision and Order filed on February 26, 2010 by the State of Hawai'i Labor and Industrial Relations Appeals Board is affirmed.

DATED:  Honolulu, Hawai'i, January 13, 2012.


On the briefs:

Donna W. Kuehu,
Claimant-Appellant pro se.

Molly Jo Campbell
Nathalie S. Pettit
(Char Hamilton Campbell
& Yoshida)
(Current counsel:  Jennifer M.
Yusi (Rush Moore LLP))
for Employer-Appellee, Self-
Insured, and Third-Party
Administrator-Appellee.

Presiding Judge

Associate Judge

Associate Judge